Filed 11/14/23  In re Nolan L. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re NOLAN L., a Person Coming Under the Juvenile Court Law. | B327022 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RANDY L.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 17CCJP00940B |

APPEAL from order of the Superior Court of Los Angeles County.  Julie Fox Blackshaw, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Randy L. is the father of minor Nolan L. Nolan's mother is not a party to this appeal. Father appeals denial, after a full hearing, of his second Welfare and Institutions Code[1] section 388 petition for further reunification services. We conclude the juvenile court acted within its discretion in denying father's petition, despite his recent sobriety and progress in his drug treatment, given father's history of relapsing into drug abuse. Accordingly, we affirm.

## BACKGROUND

Nolan came to the attention of respondent Los Angeles County Department of Children and Family Services (the Department) in September 2020, when he was just six months old. Father, while under the influence of methamphetamine, thought he heard a loud bang in his house. He rushed Nolan out of the house, drove him to another location, and called law enforcement to check on mother. Law enforcement found mother safe. She explained "this was the second time father ha[d] left the home with [Nolan] due to him hallucinating while on methamphetamine."

Shortly thereafter, law enforcement took Nolan into protective custody under exigent circumstances without a warrant. He was placed in the home of Mr. and Ms. B. (the B. family), where he has remained ever since.

The juvenile court exercised jurisdiction under section 300, subdivisions (b) and (j). As relevant here, allegations against father included that he endangered Nolan by abusing methamphetamine (which he used while caring for Nolan); failing to protect Nolan from mother's substance abuse; and failing to

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

address his own mental and emotional problems, including by failing to take prescribed psychotropic medications.

Father, who is now in his 40's, began using drugs when he was 16 years old. According to paternal grandfather, father has spent his entire adult life cycling through periods of drug abuse and sobriety. Father notes he was sober for approximately seven years—the same amount of time he spent in prison for burglary beginning in 2011. Otherwise, at no point has father managed to stay sober for a full year.

Father also has a mental health diagnosis for which he was prescribed an antidepressant. Father does not know the diagnosis and admitted not taking his prescribed medication as instructed.

The juvenile court removed Nolan from father and mother and ordered reunification services. Father's reunification services included a full drug and alcohol program, weekly drug testing, drug counseling, parenting programs, and conjoint and individual counseling.

At the six-month review hearing in April 2021, the juvenile court found the parents had failed to substantially comply with their case plans. For his part, father had participated in substance abuse and individual counseling, but was terminated from conjoint counseling due to excessive absences. Further, after generally testing on schedule and receiving only negative test results for four months, he stopped submitting to drug tests. He admitted he skipped testing because he was using methamphetamine. The juvenile court terminated reunification services and set a section 366.26 hearing.

Meanwhile, Nolan was thriving in the home of the B. family.

In December 2021, father filed a section 388 petition requesting six months of additional family reunification services. Father identified as changed circumstances his "substantive progress in drug treatment services," including enrollment in a residential substance abuse treatment program and further participation in individual counseling and related services. With the Department's support, the juvenile court granted father's petition in February 2022 and ordered return to home as Nolan's permanent plan.

But in March 2022, father left his sober living facility and stopped drug testing. He was terminated from his drug program the following month due to excessive absences. He resumed using illegal drugs.

He returned to his sober living facility on June 1, 2022, and resumed drug testing. He did not reenroll in individual counseling. He did reenroll in his outpatient drug program but was making slow progress to completion. By July 2022, five months into his renewed reunification services, father had completed only a quarter of the classes required to receive his certificate of completion.

In August 2022, the juvenile court found father's progress in the court-ordered programs insubstantial, and again terminated family reunification services. The court noted father's failure to drug test, his recent reenrollment in a substance abuse program, his inconsistent and poor quality of visits with Nolan, and his inability to separate from mother, who was still using drugs, as some of the reasons continued reunification efforts were not in Nolan's best interests. The court set another section 366.26 hearing for December 2022.

In December 2022, father filed a second section 388 petition requesting a third round of family reunification services with

Nolan. As changed circumstances, father identified completion of a parenting program and substantial progress in his drug treatment programming. He continued to reside in a sober living facility. The juvenile court set father's second section 388 petition for hearing.

The Department opposed the petition. It acknowledged father completed a substance abuse program in December 2022 and continued participation in individual counseling and other services at his sober living facility. However, father declined to participate in the after-care program offered at his treatment facility and had not participated in any conjoint counseling sessions with mother. In the two years Nolan had been with the B. family—80 percent of his life—father had failed to complete his court-ordered case plan. And all the while, Nolan continued to thrive in the care of the B. family.

The juvenile court denied father's petition. It commended father for his progress but considered his circumstances to be merely changing and not truly changed. Concerned father had not shown enough progress to warrant another round of reunification services, the court determined Nolan's best interests would be served by proceeding to a permanent plan for Nolan and the B. family.

Father timely appealed.

Father reports that, subsequent to his notice of appeal, the juvenile court declined to terminate his parental rights on the basis that the beneficial parental relationship exception under section 366.26, subdivision (c)(1)(B)(i) applied.[2]

---

[2] We grant father's motion for judicial notice of juvenile court minute orders purportedly evidencing a finding regarding the parental benefit exception. (Evid. Code, § 452, subd. (d), § 459,

## DISCUSSION

### 1. Governing Law

Section 388, subdivision (a)(1), authorizes the parent of a dependent child to, "upon grounds of change of circumstance or new evidence," petition the juvenile court "for a hearing to change, modify, or set aside any order of court previously made." (*Ibid*.)

"To support a section 388 petition, the change in circumstances must be substantial." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) It must be " 'of such significant nature that it requires a setting aside or modification of the challenged prior order.' " (*In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1451.)

Moreover, it " 'is not enough for a parent to show *just* a genuine change of circumstances under the statute. The parent must show that the undoing of the prior order would be in the best interests of the child.' " (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1512.) "[A]fter reunification services have terminated, a parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

Changing, but not changed, circumstances do not promote the best interests of the child when the proposed modification would entail delaying a child's permanent placement. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47, 49, disapproved of on

---

subd. (a).) The minute orders he attaches make no reference to the beneficial relationship exception but do reflect that the juvenile court ordered the Department to assess the permanent plan of legal guardianship.

another ground by *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.)

## 2. The Juvenile Court Did Not Abuse Its Discretion in Denying Father's Second Section 388 Petition

Because we review a juvenile court's denial of a section 388 petition for abuse of discretion (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415), the question before us is simple: was the juvenile court's denial of father's section 388 petition arbitrary, capricious or patently absurd?  (See *In re Raymundo B.* (1988) 203 Cal.App.3d 1447, 1456.)  The answer is plainly "no."

In arguing the juvenile court abused its discretion, father attempts to distinguish adverse authority by claiming "[t]his is not a case of a parent's brief period of sobriety against a lengthy history of addiction."  We disagree.  Father had a three-decades long history of substance abuse.  During that time, he repeatedly sought help, got sober, and then relapsed into drug use.  That pattern repeated during this case.

Father's history of relapses and failed reunification attempts supplied ample reason to doubt father would remain sober and succeed in reunifying if given yet another opportunity to try.  (See, e.g., *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 [no abuse of discretion in denying petition where the father was sober for 200 days but had a long history of drug addiction and multiple relapses]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686-687 [no abuse of discretion in denying petition where the mother was sober for 372 days but had a long history of drug addiction and multiple relapses]; *In re Ernesto R., supra,* 230 Cal.App.4th at p. 223 [no abuse of discretion in denying petition despite the mother's recent sobriety and completion of drug treatment program; these were changing, not changed, circumstances in the context of a long history of drug relapses].)

And the record supplied ample reason to conclude that, rather than affording father another opportunity to reunify, Nolan would be better off proceeding to a permanent plan in the care of the B. family, with whom he had spent most of his life. " 'Childhood does not wait for the parent to become adequate' " (*In re Ernesto R.*, *supra*, 230 Cal.App.4th at p. 224), and " '[c]hildren should not be required to wait until their parents grow up' " (*id*. at p. 225).

That the juvenile court, after denying father's second section 388 petition, found a beneficial relationship between father and Nolan does not affect the analysis. First, father's opening brief fails to address why the usual rule that we may consider only matters that were part of the record at the time the judgment was entered does not bar our consideration of the juvenile court's later findings. (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) In any event, father intimates only that the beneficial relationship finding evidenced that reunification would be in Nolan's best interests. But it has no impact upon the juvenile court's determination that father's circumstances were insufficiently changed to warrant relief under section 388 or our conclusion that this was not an abuse of discretion.

## DISPOSITION

The juvenile court's order denying father's section 388 petition is affirmed.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.     VIRAMONTES, J.